UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEREK TATE,<br>   Plaintiff,<br><br>  v.<br><br>D. DELGADILLO,<br>   Defendant. | Case No. 20-cv-09476 EJD (PR)<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>(Docket No. 30) |

Plaintiff, a California inmate, filed the instant *pro se* civil rights complaint under 42 U.S.C. § 1983, based on an alleged attack by two inmates which was orchestrated by Defendant Correctional Officer D. Delgadillo, in retaliation for filing inmate appeals. Dkt. No. 1. The Court dismissed the complaint with leave to amend for Plaintiff to attempt to correct deficiencies with respect to an equal protection claim; the claims against two inmates were dismissed. Dkt. No. 9 at 3-4. Plaintiff filed notice that he wished to proceed on the cognizable First and Eighth Amendment claims against Defendant Delgadillo and strike all other claims from the complaint. Dkt. No. 13. Accordingly, the Court struck the non-cognizable claims and ordered service of the matter on Defendant Delgadillo. Dkt. No. 14.

Defendant filed a motion for summary judgment, supported by declarations and exhibits, asserting that there is no evidence to support Plaintiff's allegations and that irrefutable evidence demonstrates inmates had a legitimate reason for being released from their cells at the time of the purported incident, and that he is entitled to qualified immunity.

1  Dkt. No. 30.[1]  The matter was stayed while Plaintiff appealed discovery issues to the Ninth
2  Circuit.  Dkt. No. 64.  After the Ninth Circuit denied the appeal for lack of jurisdiction, Dkt.
3  No. 68, the Court reset the briefing schedule.  Dkt. No. 70.  Plaintiff filed opposition, Dkt.
4  No. 71, and Defendant filed a reply, Dkt. No. 72.

5  For the reasons discussed below, Defendant's summary judgment motion is
6  **GRANTED**.

**DISCUSSION**

I.   **Statement of Facts**[2]

Plaintiff was housed at SVSP in Facility D, Housing Unit D2, Cell 213, from February 26, 2017, to August 9, 2017.  Delgadillo Decl. ¶ 4 (Dkt. No. 30-5 at 2); Lopez Decl. ¶ 3, Ex. A (Dkt. No. 30-4 at 4, 5, 6).  At all times relevant to this action, Inmates Jeremie Overstreet (CDCR No. T88986) and Armando Cuellar (CDCR No. AQ6797) were also housed at SVSP in Facility D, Housing Unit D2.  Lopez Decl. ¶ 3, Ex. A (Dkt. No. 30-4 at 4, 5, 6).

This action is based on an alleged "gassing"[3] attack by the two inmates against Plaintiff on August 9, 2017.  Plaintiff claims Defendant Delgadillo facilitated the attack to retaliate against Plaintiff for filing grievances.  Liberally construing the complaint, the Court found Plaintiff stated cognizable claims of retaliation and failure-to-protect against Defendant Delgadillo.  Dkt. No. 14.

---

[1] In support of the motion, Defendant submits several declarations with supporting exhibits: (1) the declaration of counsel Anne M. Kammer, Deputy Attorney General, along with Exhibits 1 through 5, which include relevant excerpts from the transcript of Plaintiff's deposition taken on December 8, 2021 (Ex. 1, hereinafter "Pl. Dep."), Dkt. No. 30-3; (2) the declaration of G. Lopez, Litigation Coordinator at SVSP, with Exhibits A (bed assignment histories), B (Rules Violation Reports histories), and C (job assignment histories), Dkt. No. 30-4; (3) the declaration of Defendant D. Delgadillo, along with Exhibit D (Rules Violation Report dated August 9, 2017, log no. 3144526), Dkt. No. 30-5; (4) the declaration of Sgt. J. Sevey of SVSP, with Exhibit F (Crime/Incident Report dated August 9, 2017, log no. SVSP-FD2-17-08-0526), Dkt. No. 30-6.
[2] The following facts are undisputed unless otherwise indicated.
[3] According to Defendant: "'gassing' means intentionally placing or throwing, or causing to be placed or thrown, upon the person of another, any human excrement or other bodily fluids or bodily substances or any mixture containing human excrement or other bodily fluids or bodily substances that results in actual contact with the persons skin or membranes."  Dkt. No. 30-1 at 7, fn. 1, citing Cal. Penal Code § 4501.1(b).

### A.     Plaintiff's Account

The following is Plaintiff's version of events.  Plaintiff states that Inmates Overstreet and Cuellar previously attacked him on July 10, 2017.  Dkt. No. 1 at 11.  Sgt. Sevey observed Plaintiff's injuries after the attack on that date and refused to document them.  Pl. Decl. in Opp. at ¶ 23 (Dkt. No. 71-2 at 5).  Thereafter, Plaintiff refused to exit his cell because of the alleged attacks by inmates in July.  Dkt. No. 1 at 14.  Plaintiff admits that he never told any correctional officer that the reason he refused to leave his cell from July 11, 2017 to August 9, 2017, was because he feared being attacked.  Pl. Dep. at 141:11-19 (Dkt. No. 30-3 at 34).

Plaintiff alleges several retaliatory acts by Defendant involving interference with his meals during late 2016 and early 2017.  Dkt. No. 1 at 20-21.  The last grievance Plaintiff submitted against Defendant Delgadillo was on March 19, 2017, for making a threatening hand gesture and comment.  Pl. Dep. At 134:18-20 (Dkt. No. 30-3 at 29).  Plaintiff claims that on April 19, 2016, Defendant Delgadillo threatened him by stating, "you write too many 602s, your life can always get harder around here [*sic*]"; Defendant then refused to sign a CDCR Form 22 (Inmate Request Form) and destroyed it after reading it.  Dkt. No. 1 at 19-20.  Thereafter until August 9, 2017, Plaintiff had no further negative interactions with Defendant by avoiding him as much as possible.  Id. at 134:24-135:7 (Dkt. No. 30-3 at 29-30).

On August 9, 2017, at approximately 1530 hours, Inmates Overstreet and Cuellar came to the front of Plaintiff's cell and "began to taunt and harass" him for not coming out of his cell.  Dkt. No. 1 at 14; Dkt. No. 71-2 at 5.  Plaintiff observed the two inmates speak with Defendant Delgadillo through the control booth window and leave.  Dkt. No. 1 at 15; Dkt. No. 71-2 at 5.  When these two inmates returned later at about the "1610 hr," Defendant Delgadillo opened Plaintiff's cell door and the two inmates threw a coffee canister full of urine and feces into Plaintiff's cell.  Dkt. No. 1 at 16-17.  Defendant could not initially open the door because Plaintiff had attempted to jam the door.  Id. at 17.  However, Defendant "began to open and close the… door continually" until there was enough of an opening for

the inmates to throw the canister into Plaintiff's cell. Id. Plaintiff claims that after the attack, he threatened to "write-up" Defendant Delgadillo for the attack. Id. at 23. Plaintiff claims Defendant Delgadillo responded, "there's more where that came from, go ahead, your 602s mean hard time for you, not me." Id.

Plaintiff began experiencing chest pains from the stench inside his cell from the gassing attack. Id. at 24. After Defendant Delgadillo opened the cell door for the pill call line at about "2000 hr," Plaintiff informed Officer Ventura that he was experiencing chest pains and shortness of breath. Id. After Sgt. Sevey[4] arrived at approximately 2040 hours, Plaintiff told him about the gassing attack and showed him "the soiled linens used to clean the feces and urine." Id. at 24-25. Sgt. Sevey assured Plaintiff that the issue would be addressed but that Plaintiff's medical issues needed to be taken care of first. Id. at 25. Sgt. Sevey observed the soiled linen but "failed to obtain/preserve and collect this evidence." Pl. Decl. at ¶ 28 (Dkt. No. 71-2 at 6).

Plaintiff states that there were "no porter related duties existed during the 1600 hr count time" on August 9, 2017. Pl. Decl. at ¶ 4 (Dkt. No. 71-2 at 2). Plaintiff also states that he did not report for any D2 housing porter related duties from September 30, 2016 through August 9, 2017. Id. at ¶ 12. Lastly, Plaintiff states that he was not disciplined for refusing to work on August 9, 2017. Id. at ¶ 27.

Plaintiff also states that he was "falsely accused of threatening Defendant" and placed in administrative segregation on August 9, 2017. Dkt. No. 1 at 25.

### B. Defendant's Account

The following is Defendant Delgadillo's version of events. In contrast to Plaintiff's account, Defendant states that there was a legitimate reason for opening the inmates' cell doors at the relevant time and denies any retaliatory motive in doing so. Defendant also

---

[4] In the complaint, Plaintiff identified the sergeant as "Pavey." Then in his opposition, Plaintiff refers to him as "Sevey." Dkt. No. 71-1 at 4-5. Accordingly, the Court assumes that the parties agree that this individual is Sgt. Sevey, who submitted a declaration in support of Defendant's summary judgment motion.

does not recall a gassing incident against Plaintiff on August 9, 2017.

According to Defendant, there is no record of any incident warranting a disciplinary action, i.e., a Rules Violation Report – "RVR," involving Plaintiff and Inmates Overstreet and Cuellar on July 10, 2017, August 9, 2017, or any other date. Delgadillo Decl. ¶¶ 6, 15 (Dkt. No. 30-5 at 3, 5); Sevey Decl. ¶¶ 4-5 (Dkt. No. 30-6 at 2); Lopez Decl. ¶ 4, Ex. B (Dkt. No. 30-4 at 8-9). CDCR regulations provide that any incident between inmates that involves violence and/or results in physical injury is considered an unusual occurrence and is entered into the daily log; it also qualifies as a serious rules violation, and any assault by an inmate on another inmate or a staff member results in a write up and possible refer to the district attorney for pursuit of criminal charges.[5] Delgadillo Decl. ¶ 5 (Dkt. No. 30-5 at 2-3); Sevey Decl. ¶ 3 (Dkt. No. 30-6 at 2). Furthermore, during his deposition, Plaintiff stated that he "had no issues with" Inmates Overstreet and Cuellar before the day of the alleged attack on August 9, 2017. Pl. Dep. at 84:4-7, 135:24-25 (Dkt. No. 30-3 at 14, 30).

On August 9, 2017, Plaintiff and Inmates Overstreet and Cuellar were assigned to work as third-watch porters.[6] Delgadillo Decl. ¶ 8 (Dkt. No. 30-5 at 3); Lopez Decl. ¶ 5, Ex. C (Dkt. No. 30-4 at 11-14). These inmates would have been subject to release from their cells during the regularly scheduled work hours of 1400-1645 hours and 1715-2100 hours. Delgadillo Decl. ¶¶ 7, 9 (Dkt. No. 30-5 at 4). As the third-watch control booth officer from 1400 hours to 2200 hours on August 9, 2017, it would have been part of Defendant Delgadillo's job duties to release the inmates from their cells for the purpose of completing their work assignments. Id.

At approximately 1615 hours, Defendant Delgadillo attempted to release Plaintiff

---

[5] For example, on July 11, 2017, Plaintiff was charged with an RVR for fighting Inmate Taylor (CDCR No. AR0369). Kammer Decl. ¶ 4, Ex. 3 (Dkt. No. 30-3 at 39-43); Dkt. No. 1 at 14. After the incident, Plaintiff stated that there was no animosity and no unresolved issues with Inmate Taylor and informed staff that he could continue to program safely in his assigned housing unit. Kammer Decl. ¶ 3, Ex. 2 (Dkt. No. 30-3 at 37).

[6] A porter's duties include "performing all janitorial duties necessary to maintain the cleanliness of the porter's assigned building, including ensuring the restroom/toilet area is clean and fully stocked with supplies, cleaning shower areas, sweeping, mopping, washing walls, and emptying trash contains as directed." Delgadillo Decl. ¶ 8 (Dkt. No. 30-5 at 3).

from his cell for the purpose of working his shift as a porter, but Plaintiff refused to come out and work. Delgadillo Decl. ¶ 10, Ex. D (Dkt. No. 30-5 at 8). Defendant Delgadillo was not able to open Plaintiff's cell door more than a foot wide because the cell door was jammed with papers; Plaintiff told Defendant Delgadillo to close his cell door, and after multiple attempts, Defendant was able to do so. Id. Defendant Delgadillo does not recall a gassing incident by Inmates Overstreet and Cuellar at that time. Id. at ¶ 15 (Dkt. No. 30-5 at 5).

Later that day at approximately 2030 hours, Plaintiff was released from his cell for medication distribution. Delgadillo Decl. ¶ 12, Ex. D (Dkt. No. 30-5 at 8). Plaintiff refused to take his medicine and then refused to return to his cell after Defendant Delgadillo instructed him to do so. Id. Plaintiff threatened Defendant, stating, "'I'm going to stab you [in] the neck you fat son of a bitch,'" while "making a stabbing gesture with his right hand towards his own throat area." Id. Sgt. J. Sevey responded to the housing unit and was informed by Defendant Delgadillo that Plaintiff had made a threat towards him. Id.; Sevey Decl. ¶ 4 (Dkt. No. 30-6 at 2-3). Sgt. Sevey also does not recall a gassing incident against Plaintiff by Inmates Overstreet and Cuellar on August 9, 2017. Sevey Decl. ¶ 5 (Dkt. No. 30-6 at 2-3). Sgt. Sevey attempted to talk to Plaintiff, who was agitated, and instructed him to return to his cell. Delgadillo Decl. ¶ 12 (Dkt. No. 30-5 at 5); Sevey Decl. ¶ 4, Ex. F (Dkt. No. 30-6 at 5). Plaintiff told Sgt. Sevey that he was having chest pains; Defendant Delgadillo activated the Housing Unit's Audible Alarm and Sgt. Sevey initiated a Code 1 medical emergency response via institutional Radio. Id. At approximately 2100 hours, Plaintiff was transported by another officer to the Correctional Treatment Center. Id. The medical report from this incident indicates Plaintiff suffered no injuries. Kammer Decl. ¶ 6, Ex. 4 (Dkt. No. 30-3 at 45). When staff wanted to send him to an outside hospital, Plaintiff refused to go. Pl. Dep. at 131:15-19,138:8-10 (Dkt. No. 30-3 at 27, 33).

The same day, Defendant Delgadillo authored and submitted an RVR (log no. 3144526) charging Plaintiff with threatening great bodily injury or death and a Crime/Incident Report Part C – Staff Report (CDCR 837-C) (log no. SVSP-FD2-17-08-

0526), documenting the incident. Delgadillo Decl. ¶ 13, Ex. D (Dkt. No. 30-5 at 12-13). Plaintiff was found guilty of the charge. Id. Sgt. Sevey also authored and submitted a Crime/Incident Report Part C – Staff Report (CDCR 837-C) (log no. SVSP-FD2-17-08-0526), also reporting that Plaintiff had threatening Defendant Delgadillo with great bodily injury. Sevey Decl. ¶ 5, Ex. F (Dkt. No. 30-6 at 2-3, 5). Neither staff report mentions a gassing incident against Plaintiff by Inmates Overstreet and Cuellar or soiled linens.

Inmates Overstreet and Cuellar were not charged with a rule violation for any incident, gassing or otherwise, occurring on August 9, 2017. Delgadillo Decl. ¶ 15 (Dkt. No. 30-5 at 5); Sevey Decl. ¶ 5 (Dkt. No. 30-6 at 2-3). An investigation into Plaintiff's claim regarding the alleged gassing incident concluded that no violation of policy or procedure occurred, and that on August 9, 2017, Defendant Delgadillo attempted to release Plaintiff from his cell so that Plaintiff could conduct his assigned duties as a porter. Delgadillo Decl. ¶ 16 (Dkt. No. 30-5 at 5-6); Dkt. No. 1-1 at 7-10.

Prior to August 9, 2017, Plaintiff submitted grievances against Defendant Delgadillo but none of Plaintiff's claims were substantiated. Id. ¶ 17.

## II.   **Summary Judgment**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Cattrett, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. See Celotex Corp., 477 U.S. at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id. at 325. If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary judgment may be granted. See Liberty Lobby, 477 U.S. at 249-50.

The burden then shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial.'" Celotex Corp., 477 U.S. at 324 (citations omitted). "This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence." In re Oracle Corporation Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Liberty Lobby, 477 U.S. at 252). "The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue." Id. (citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). "In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." Id. (citing Liberty Lobby, 477 U.S. at 252). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." Celotex Corp., 477 U.S. at 323.

The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a material fact. See T.W. Elec. Serv., Inc. V. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the

nonmoving party. See id. at 631. It is not the task of the district court to scour the record in search of a genuine issue of triable fact. Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. Id. If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party. See id.; see, e.g., Carmen v. San Francisco Unified School District, 237 F.3d 1026, 1028-29 (9th Cir. 2001). The court's obligation to view evidence in the light most favorable to the non-movant does not require it to ignore undisputed evidence produced by the movant. L.F. v. Lake Washington School District, 947 F.3d 621, 625 (9th Cir. 2020).

Courts "may not simply accept what may be self-serving account by the police officer," especially in light of contrary evidence. Zion v. County of Orange, 874 F.3d 1072, 1076 (9th Cir. 2017) (quoting Scott v. Henrich, 39 F.3d 912, 915 (9th Cir. 1994); see id. (finding summary judgment inappropriate when officer's testimony that a knife-wielding suspect was trying to get up after being shot at 18 times, with 9 of those shots at close range while the suspect was lying on the ground, was contradicted by the video which did not show the suspect trying to get up). "When opposing parties tell different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380-83 (2007) (police officer entitled to summary judgment based on qualified immunity in light of video evidence capturing plaintiff's reckless driving in attempting to evade capture which utterly discredits plaintiff's claim that there was little or no actual threat to innocent bystanders); see Intel Corp. Inv. Policy Comm. v. Sulyma, 140 S. Ct. 768, 779 (2020) (in ERISA case where the issue was whether plaintiff had actual knowledge of an alleged fiduciary breach, the court indicated that plaintiff's denial of knowledge could be discredited at summary judgment stage if it was blatantly contradicted by electronic records showing plaintiff viewed a website containing relevant disclosures of investment decisions); cf. Hughes v. Rodriguez, 31 F.4th 1211, 1219 (9th Cir.

2022) (district court erred in disregarding all of plaintiff's testimony where bodycam footage of arrest blatantly contradicted some but not all of the testimony; video did not depict whether plaintiff was punched <u>after</u> he was handcuffed, and panel majority found audio of the arrest was also unclear as to the sequence).

### A. Failure to Protect Claim

Plaintiff claims Defendant Delgadillo violated the Eighth Amendment by failing to protect him from the attack by Inmates Overstreet and Cuellar. Dkt. No. 1 at 34. Defendant asserts that he did not fail to protect Plaintiff from a known risk of harm to Plaintiff's safety. Dkt. No. 30-1 at 12.

The Eighth Amendment requires that prison officials take reasonable measures to guarantee the safety of prisoners. <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994). In particular, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. <u>Id.</u> at 833; <u>Cortez v. Skol</u>, 776 F. 3d 1046, 1050 (9th Cir. 2015); <u>Hearns v. Terhune</u>, 413 F.3d 1036, 1040 (9th Cir. 2005); <u>Hoptowit v. Ray</u>, 682 F.2d 1237, 1250 (9th Cir. 1982). The failure of prison officials to protect inmates from attacks by other inmates or from dangerous conditions at the prison violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious; and (2) the prison official is, subjectively, deliberately indifferent to inmate health or safety. <u>Farmer</u>, 511 U.S. at 834. A prison official is deliberately indifferent if he knows of and disregards an excessive risk to inmate health or safety by failing to take reasonable steps to abate it. <u>Id.</u> at 837.

A prisoner may state a § 1983 claim under the Eighth Amendment against prison officials only where the officials acted with "deliberate indifference" to the threat of serious harm or injury to an inmate by another prisoner. See <u>Berg v. Kincheloe</u>, 794 F.2d 457, 459 (9th Cir. 1986). However, an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious

harm. See Farmer, 511 U.S. at 842; see also Lemire v. Cal. Dept. Corrections & Rehabilitation, 726 F.3d 1062, 1078 (9th Cir. 2013) (articulating two-part test for deliberate indifference: plaintiff must show, first, that risk was obvious or provide other evidence that prison officials were aware of the substantial risk to the inmates' safety, and second, no reasonable justification for exposing inmates to risk). But while obviousness of risk may be one factor in demonstrating subjective knowledge, a defendant's liability must still be based on actual awareness of the risk rather than constructive knowledge. Harrington v. Scribner, 785 F.3d 1299, 1304 (9th Cir. 2015).

While the deliberate indifference standard requires a finding of some degree of individual culpability, it does not require an express intent to punish. See Haygood v. Younger, 769 F.2d 1350, 1354-55 (9th Cir. 1985) (en banc), cert. denied, 478 U.S. 1020 (1986). A prison official need not "believe to a moral certainty that one inmate intends to attack another at a given place at a time certain before that officer is obligated to take steps to prevent such an assault." See Berg, 794 F.2d at 459. Before being required to take action he must, however, have more than a "mere suspicion" that an attack will occur. See id. While a prisoner's failure to give prison officials advance notice of a specific threat is not dispositive with respect to whether prison officials acted with deliberate indifference to the prisoner's safety needs, deliberate indifference will not be found where there is no other evidence in the record showing that the defendants knew of facts supporting an inference and drew the inference of substantial risk to the prisoner. Labatad v, Corrections Corp. of America, 714 F.3d 1155, 1160-61 (9th Cir. 2013) (finding no deliberate indifference to prisoner's safety where the record, viewed objectively and subjectively, did not lead to an inference that the prison officials responsible for making the prisoner's cell assignment were aware that he faced a substantial risk of harm).

Defendant asserts that there is no evidence to support Plaintiff's claim that Inmates Overstreet and Cuellar posed an objectively serious risk of harm to Plaintiff's safety. Dkt. No. 30-1 at 13. Defendant points out that the three inmates were housed together in Facility

11

D, Housing Unit D12, floor 2, from March 1, 2017 through August 9, 2017, with no record of any incidents, altercations, or enmity amongst them. Id., citing Delgadillo Decl. ¶¶ 4, 6, 15; Sevey Decl. ¶ 4; Lopez Decl. ¶ 4, Ex. B. Defendant also asserts that Plaintiff stated during his deposition that he "had no issues with" Inmates Overstreet and Cuellar. Id., citing Pl. Dep. at 135:24-25. Furthermore, Defendant asserts that there is no record of any incident occurring on July 10, 2017, involving Plaintiff and the two inmates. Id. Defendant asserts that under these circumstances, no trier of fact would conclude that Inmates Overstreet and Cuellar posed a threat to Plaintiff's safety, much less a substantial one. Id.

Furthermore, Defendant asserts that even assuming arguendo that Inmates Overstreet and Cuellar posed an objectively serious harm to Plaintiff's safety, the undisputed evidence shows that Defendant Delgadillo was neither aware of, nor deliberately indifferent to, a substantial risk of serious harm to Plaintiff. Dkt. No. 30-1 at 14. Defendant Delgadillo states that he was not aware of any incident involving Plaintiff and Inmates Overstreet and Cuellar on July 10, 2017. Id., citing Delgadillo Decl. ¶ 6. Defendant also points out that Plaintiff admitted that he never told any correctional officers – including Defendant Delgadillo, that he refused to leave his cell from July 11, 2017 to August 9, 2017, out of fear of being attacked. Id., citing Pl. Dep. at 141:11-19. Furthermore, after a fight with Inmate Taylor, Plaintiff informed staff that he could program safely on the yard. Id., citing Kammer Decl. ¶ 3, Ex. 2. Defendant asserts that Plaintiff's allegations are based on mere speculation and inference based on a "sequence of events." Dkt. No. 30-1 at 14. Defendant asserts that Plaintiff admits he could not hear the alleged conversation between Defendant and the two inmates shortly before the alleged attack because "they started talking in lower tones" and he "was unable to hear everything that they said." Id. Defendant asserts that Defendant Delgadillo opened the cell doors at that time to release Plaintiff and Inmates Overstreet and Cuellar for the purpose of completing their work assignments. Id. at 15, citing Delgadillo Decl. ¶¶ 8, 9; Lopez Decl. ¶ 5, Ex. C.

In opposition, Plaintiff asserts that the alleged attack occurred at a time "when no

inmate movement is allowed" and he was "unprepared and surprised." Dkt. No. 71 at 2. He largely relies on his complaint, deposition testimony, and declaration, along with documents submitted in support. See generally Dkt. No. 71, 71-1. He asserts that Defendant Delgadillo authored a "false" RVR to cover-up the attack. Id. at 4. Plaintiff also refutes Defendant's assertion that he opened the cell doors to release Plaintiff and the other inmates for porter duty, asserting that he was never assigned to porter duties and that furthermore, all porter duties had been suspended. Id. at 5-6. In other words, Plaintiff is asserting that Defendant's purported reason for opening the cell doors is false. Plaintiff asserts that Defendant spoke with the inmates shortly before the attack, and that he and Defendant had a heated, derogatory exchange immediately following the gassing incident. Id. at 9-10. He asserts that the Defendant was on notice that a viable threat was apparent because he saw Inmates Overstreet and Cuellar taunt and harass Plaintiff shortly before the attack. Id. at 19-20. Furthermore, when Defendant inquired of them, "Hey what was all that about?", Inmate Cuellar said, "He ain't been to the yard in over four weeks scary ass nigga…" Id. at 20. Plaintiff asserts that Defendant therefore had a "duty to speak with the Plaintiff and have the Plaintiff explain why he had refused to leave his cell." Id. Plaintiff asserts that Defendant has not refuted this exchange in his motion, and that he was thereby informed of Plaintiff's refusal to exit his cell for the last four weeks. Id. at 20, 24.

In reply, Defendant asserts that Plaintiff's sworn statements are self-serving and insufficient to create a genuine dispute of fact, and Plaintiff has proffered no other evidence to substantiate his claims. Dkt. No. 72 at 2. Defendant asserts that the documentary evidence submitted by Plaintiff directly contradicts key portions of his declaration. Id. As an example, Defendant points to the July 9, 2017 - Request for Interview, Item, or Service and attachments, which demonstrates that Plaintiff was assigned as a third-watch porter beginning on September 30, 2016, and through August 9, 2017, and that Plaintiff knew of this assignment: in the Request form, Plaintiff inquired whether he could get a paid for the job, and the Assignment Roster indicates that Plaintiff was a porter as of September 30,

13

2016. Id., citing Dkt. No. 71-3 at 1-3. Defendant asserts that these documents directly undermine Plaintiff's repeated insinuations that he was not a third-watch porter and therefore Defendant Delgadillo should not have opened his cell door to release him for such duties. Id. Defendant also points out that the Job Performance Sheets that Plaintiff submits with his opposition, Dkt. No. 71-3 at 7-40, confirm his porter assignment and demonstrate the undisputed fact that Plaintiff frequently refused to perform his duties as a porter. Dkt. No. 72 at 2. Defendant also asserts that the provider notes from August 9, 2017, regarding Plaintiff's complaints of chest pain show that Plaintiff refused treatment for those pains and instead complained of constipation. Id. at 3, citing Dkt. No. 71-4 at 1-7. Defendant asserts that these notes directly contradict Plaintiff's claim that he "required immediate medical attention," or otherwise suffered any injuries that day. Id. Because Plaintiff's documentary evidence undermines and otherwise does not support his own sworn statements, Defendant assert that his statements are insufficient to create a genuine issue of material fact. Id.

After carefully reviewing the papers and viewing the evidence in the light most favorable to Plaintiff, the Court finds that the evidence presented does not show a genuine dispute as to any material fact relating to Plaintiff's failure to protect claim against Defendant Delgadillo. Even if it were true that Plaintiff was gassed by Inmates Overstreet and Cuellar on August 9, 2017, despite the lack of documentation that such an incident occurred, the undisputed evidence shows that Defendant Delgadillo did not know of, nor did he disregard, an excessive risk to Plaintiff' safety.

First of all, the Court cannot accept Plaintiff's self-serving account in light of contrary evidence. Zion, 874 F.3d at 1076; Scott, 550 U.S. at 380-83. The Court agrees with Defendant that some of the allegations that Plaintiff makes are clearly contradicted by his own documentary evidence. For example, Plaintiff attempts to dispute Defendant's argument that he had a valid reason to open the cell doors by denying that he had porter duties. However, as Defendant points out, Plaintiff's evidence in opposition, i.e., the Request for Inmate Services form and the Job Performance Sheets, contradicts Plaintiff's

14

assertion that he was not actually assigned to be a porter. Dkt. No. 71-3. Rather, this evidence shows that Plaintiff was assigned as a porter and that he frequently refused to perform his duties. Id. Accordingly, the Court need not accept Plaintiff's account that he did not have porter duties during the relevant time and thereby reject Defendant's reason for opening the cell doors, as no reasonable jury could believe Plaintiff's contradictory evidence.

Furthermore, it is undisputed that no officer was aware that Plaintiff was in fear of an attack from other inmates. Plaintiff admits that he did not inform Defendant or any other officer that he refused to leave his cell because he feared an attack. See supra at 3. The only conflict that was recorded during the relevant time period involved another inmate (Taylor), and Plaintiff informed staff that there were no unresolved issues that required a housing change. See supra at 5, fn. 5. Although he asserts that Inmates Overstreet and Cuellar previously attacked him on July 10, 2017, Plaintiff only alleges that Sgt. Sevey was aware of it and failed to document it. There is no evidence that Defendant Delgadillo knew of this July 10, 2017 incident and was aware that Plaintiff was in danger of further serious harm or injury by these inmates which required that reasonable steps be taken to prevent an attack.

In opposition, Plaintiff attempts to argue that Defendant was on notice because he observed the inmates taunt and harass him prior to the attack, and therefore he had a "duty" to inquire of Plaintiff as to why he was not coming out of his cell. See supra at 14. But even if Defendant had such a duty and failed to perform it, his failure only amounts to negligence which does not amount to an Eighth Amendment violation. See Farmer, 511 U.S. at 835-37 & n.4; see also Estelle v. Gamble, 429 U.S. 97, 106 (1976) (establishing that deliberate indifference requires more than negligence). Having failed to inquire of Plaintiff, there is no evidence that Defendant was made aware by Plaintiff that he feared an attack from Inmates Overstreet and Cuellar. Furthermore, there is no evidence that these inmates threatened to harm Plaintiff and that Defendant Delgadillo was aware of their threats. Rather, according to Plaintiff's version of events, when Defendant asked them about their

"heated" exchange with Plaintiff, the inmates merely expressed disdain at Plaintiff's refusal to come out of his cell. These facts are not sufficient to establish that a risk to Plaintiff was obvious or that there was reason for Defendant to suspect that an attack would occur. There is simply no evidence that Defendant Delgadillo actually knew of facts supporting an inference and that he drew the inference of substantial risk to Plaintiff to establish that Defendant acted with deliberate indifference. Labatad, 714 F.3d at 1160-61.

Based on the evidence presented, Defendant has shown that there is no genuine issue of material fact with respect to Plaintiff's failure to protect claim. See Celotex Corp., 477 U.S. at 323. Plaintiff has failed to point to specific facts showing that there is a genuine issue for trial, id. at 324, or identify with reasonable particularity the evidence that precludes summary judgment, Keenan, 91 F.3d at 1279. Accordingly, Defendant is entitled to judgment as a matter of law on this claim. Id.; Celotex Corp., 477 U.S. at 323.

**B.  Retaliation**

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). Accord Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995) (prisoner suing prison officials under § 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action did not advance legitimate penological goals, such as preserving institutional order and discipline). The prisoner must show that the type of activity he was engaged in was constitutionally protected, that the protected conduct was a substantial or motivating factor for the alleged retaliatory action, and that the retaliatory action advanced no legitimate penological interest. Hines v. Gomez, 108 F.3d 265, 267-68 (9th Cir. 1997) (inferring retaliatory motive from circumstantial evidence).

1    Defendant asserts that Plaintiff cannot establish with specific and substantial
2    evidence that Defendant Delgadillo opened Plaintiff's cell door and cell doors of Inmates
3    Overstreet and Cuellar on August 9, 2017, with a retaliatory motive.  Dkt. No. 30-1 at 16.
4    Defendant asserts that Defendant Delgadillo had no reason to retaliate against Plaintiff on
5    or around August 9, 2017.  Delgadillo Decl. ¶ 17.  Defendant points out that Plaintiff's
6    grievances against Defendant Delgadillo were unsubstantiated, and that Plaintiff admitted
7    that he had no negative interactions with Defendant for several months before the incident.
8    Dkt. No. 30-1 at 16, citing Pl. Dep. at 134:18-20, 25, 135:1-7.

9    In opposition, Plaintiff repeats his allegations from the complaint that Defendant
10   engaged in adverse acts during the preceding months in retaliation for his filing "too many
11   602s." Dkt. No. 71-1 at 10-11. Plaintiff asserts that Defendant had an affirmative duty to
12   protect him from harm, and that his failure to do so was motivated by retaliatory animus.  Id.
13   at 11.  Furthermore, Plaintiff asserts that Defendant cannot use a "proper and neutral
14   procedure" to retaliate against him for exercising his constitutional rights.  Id. at 15, citing
15   Bruce v. Ylst, 351 F.3d 1283, 1288-89 (9th Cir. 2003).

16   In reply, Defendant asserts that Plaintiff's allegation of retaliatory animus is merely
17   speculative and is insufficient to establish the existence of a genuine dispute as to whether
18   Defendant's actions were in fact motivated by Plaintiff's previous protected activity.  Dkt.
19   No. 72 at 4.  Defendant points out that Plaintiff does not dispute that Inmates Overstreet and
20   Cuellar were assigned as porters on the relevant date.  Id.  Furthermore, Defendant asserts
21   that by August 9, 2017, it had been almost six months since Plaintiff had submitted a
22   grievance against Defendant Delgadillo, indicating that too much time had passed to
23   establish causation.  Id., citing Dkt. No. 71-1 at 41.

24   After carefully reviewing the papers and viewing the evidence in the light most
25   favorable to Plaintiff, the Court finds that the evidence presented does not show a genuine
26   dispute as to any material fact relating to Plaintiff's retaliation claim against Defendant
27   Delgadillo.  As discussed above, see supra at 15, Plaintiff's declarations and papers contain

17

contradictory information regarding his porter assignment such that the Court should not accept Plaintiff's self-serving account which no reasonable jury could believe in light of this contrary evidence. Zion, 874 F.3d at 1076. Accordingly, it cannot be said there is a genuine dispute as to whether Defendant was taking adverse action against Plaintiff when he opened the inmates' cell doors on August 9, 2017, to satisfy the first Rhodes element.

Furthermore, Plaintiff has failed to point to facts establishing that there is a genuine dispute regarding causation, the second element. Evidence probative of retaliatory animus includes proximity in time between the protected speech and the alleged adverse action, prison official's expressed opposition to the speech, and prison official's proffered reason for the adverse action was false or pretextual. See Shephard v. Quillen, 840 F.3d 686, 690 (9th Cir. 2016); see also Corales v. Bennett, 567 F.3d 554, 568 (9th Cir. 2009) (non-prisoner case). Retaliatory motive may also be shown by inconsistency with previous actions, as well as direct evidence. Bruce v. Ylst, 351 F.3d 1283, 1288-89 (9th Cir. 2003). Mere speculation that defendants acted out of retaliation is not sufficient. Wood v. Yordy, 753 F.3d 899, 904 (9th Cir. 2014) (citing cases) (affirming grant of summary judgment where no evidence that defendants knew about plaintiff's prior lawsuit, or that defendants' disparaging remarks were made in reference to prior lawsuit). Here, Plaintiff's last grievance against Defendant Delgadillo was filed on March 19, 2017, nearly five months before the underlying incident. See supra at 3. Furthermore, the alleged remark by Defendant accusing Plaintiff of filing "too many" grievances was made in April 2017, also several months preceding. Accordingly, it cannot be said that there is sufficient proximity in time between Plaintiff's protected conduct in March 2017, and the alleged adverse act in August 2017 to show retaliatory motive. Nor is there any allegation that Plaintiff was engaged in protected conduct at the time of the alleged retaliatory act. Lastly, there is no evidence that Defendant's proffered reason for opening the cell doors is false or pretextual. What remains is Plaintiff's mere speculation that Defendant acted with retaliatory motive, which is not sufficient. See Wood, 753 F.3d at 904.

Based on the evidence presented, Defendant has shown that there is no genuine issue of material fact with respect to Plaintiff's retaliation claim. See Celotex Corp., 477 U.S. at 323. In opposition, Plaintiff has failed to point to specific facts showing that there is a genuine issue for trial, id. at 324, or identify with reasonable particularity the evidence that precludes summary judgment, Keenan, 91 F.3d at 1279. Accordingly, Defendant is entitled to judgment as a matter of law on this retaliation claim. Id.; Celotex Corp., 477 U.S. at 323.

## CONCLUSION

For the reasons stated above, Defendant D. Delgadillo's motion for summary judgment is **GRANTED**.[7] Dkt. No. 30. The failure to protect and retaliation claims against Defendant are **DISMISSED** with prejudice.

This order terminates Docket No. 30.

**IT IS SO ORDERED.**

**Dated:** September 15, 2023

EDWARD J. DAVILA
United States District Judge

---

[7] Because the Court finds that no constitutional violation occurred, it is not necessary to reach Defendant's qualified immunity argument.